UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
: 
UNITED STATES OF AMERICA, : NOT FOR PUBLICATION
: ORDER
-against- :
: 09-CR-159 (KAM)
HARRY KAHALE, *et al.*, :
:
*Defendants*. :
:
----------------------------------------------------------------x

KIYO A. MATSUMOTO, United States District Judge:

        Before the court are: (1) defendant Gregory Scarlato's ("Scarlato") and defendant Mitchell Reisman's ("Reisman") renewed motions for the severance of Reisman's trial;[1] (2) Reisman's motion to preclude testimony by government witness Russell Stern ("Stern");[2] and (3) defendants' motions for the court to conduct *in camera* review of certain witness statements prepared by the Federal Bureau of Investigation ("FBI 302s").  As set forth more fully below, (1) Scarlato's and Reisman's motions for severance of Reisman's trial are denied; (2) Reisman's motion to preclude testimony by Stern is denied; and (3) the court has conducted an *in camera* review of the requested documents and finds that such documents do not meet the materiality standard under United States v. Brady and its progeny and accordingly finds that the government need not disclose these documents pursuant to Brady.

---

[1] See Doc. No. 190, Ltr. dated 2/2/10 ("Scarlato 2/2/10 Ltr."); Doc. No. 200, Ltr. dated 2/3/10 ("Reisman 2/3/10 Ltr."); Doc. No. 196, Ltr. dated 2/3/10 ("Gov. 2/3/10 Ltr. #1"); Doc. No. 203, Ltr. dated 2/3/10 ("Gov. 2/3/10 Ltr. #2").

[2] See Doc. No. 186, Ltr. dated 1/31/10 ("Reisman 1/31/10 Ltr."), Doc. No. 151, Ltr. dated 1/22/10 ("Reisman 1/22/10 Ltr."); Doc. No. 197, Ltr. dated 2/3/10 ("Gov. 2/3/10 Ltr. #3").

**Scarlato's and Reisman's Renewed Motions to Sever**

Scarlato previously moved to sever Reisman's trial and to preclude introduction of any evidence related to Reisman's other business ventures in a joint trial. (See Doc. No. 38, Ltr. dated 8/7/09.) Scarlato also previously argued that the potential introduction of Reisman's other business venture evidence provided an additional basis for severance of Reisman's trial precisely because such introduction would be unduly prejudicial to Scarlato and other defendants. (See Doc. No. 67, Ltr. dated 10/21/09; Doc. No. 63-4 at 15, Mot. dated 10/07/09 (submitting that "in view of the . . . highly inflammatory nature of [evidence relating to Reisman's other business ventures] . . . there is no combination of rulings or curative instructions that could effectively avoid prejudice and guarantee . . . a fair joint trial" if that evidence is admitted.) On the eve of trial, Scarlato reverses course regarding evidence of Reisman's other business ventures, and now argues the directly converse position, asserting that that severance is required because such evidence should be admitted. (See Scarlato 2/2/10 Ltr.)

Namely, and despite the fact that all parties have had sufficient opportunity to present their positions and the court has already considered and decided this issue, (see Doc. No. 110, Order dated 12/23/10 ("12/23/10 Order") at 52-71), Scarlato now claims that his right to a fair trial will be compromised, not if the evidence of Reisman's other business ventures is *excluded*, but instead, if this evidence is *not admitted*, because he now realizes that such evidence constitutes "essential exculpatory evidence" available to Scarlato only if Reisman's trial is severed. (See Scarlato 2/2/10 Ltr.) More specifically, Scarlato first claims that "in order to effectively present a defense," he must be permitted to elicit that the first $100,000 investment by government witness Vern Wetmore ("Wetmore") in B.I.M. purportedly occurred through Reisman alone, without Scarlato's knowledge or consent. (Id.) Scarlato claims that this "jury

2

argument" would only make sense if he is permitted to elicit testimony from Wetmore regarding his entire course of dealings with Reisman alone in various other business ventures. (Id.) Second, Scarlato claims that severance is required in order to allow him to elicit testimony from government witness Russell Stern tending to show that Scarlato was "unaware" of Stern's $200,000 "oil investment" through Reisman, from which allegedly $67,000 was used to pay off other government witnesses, the Amankwahs, who had made a loan to B.I.M. (Id.) Scarlato further asserts that Scarlato played a "peripheral role" in connection with, and was not "aware" of the "full nature" of a transaction involving the Amankwahs. (Id.) Scarlato blames the government's "late disclosures" of the Amankwah's and Stern's statements to the FBI (the FBI 302s).[3]

In response, the government contends that the evidence of Reisman's prior dealings with Wetmore and Stern would most likely be inadmissible in any trial that did not involve Reisman because "Reisman's prior dealings with Wetmore and Stern are not probative of facts relevant to Scarlato" or the other codefendants. (See Gov. 2/3/10 Ltr. #1.) The court's 12/23/09 Order precluded this evidence in any event. Moreover, the government denies that any evidence regarding Reisman's other business dealings with Wetmore or Stern necessarily exculpates Scarlato and contends that Scarlato's "failure to pursue" this grounds for severance earlier "belies his claims that this is important, or even exculpatory evidence." (Id. at 3.) Finally, the government asserts that Scarlato will have ample opportunity to elicit testimony from Wetmore and Stern showing that Scarlato was not involved in the $100,000 deal with Wetmore or the $200,000 deal with Stern, without requiring the severance of Reisman's trial and the

---

3  The government disputes that the disclosures of the FBI 302s are late, and notes that the Amankwah 302s were produced on January 15, 2010. (Id.) The government also notes that in a submission in an August 2009 submission, defendants were advised that Reisman solicited $100,000 from Victim 1 and used the funds for his own purposes, thus putting Scarlato on notice that Reisman solicited funds that Scarlato never saw. (Id. at 3.)

3

admission of additional, extraneous evidence regarding other, unrelated business ventures pursued by Reisman with these witnesses. (Id. at 3-4.)

In light of Scarlato's renewed motion to sever Reisman's trial (albeit for the converse reason), Reisman renews his own motion to sever his trial, this time on the grounds that Scarlato's letter purportedly indicates that Scarlato "plans to raise a defense that is antagonistic to and irreconcilable with Mr. Reisman's defense." (See Reisman 2/3/10 Ltr.) The government disputes Reisman's characterization of these defenses as mutually antagonistic and cites the court's stated view during proceedings on February 1, 2010 that the defenses were not "mutually antagonistic." (See Gov. 2/3/10 Ltr. #2) (citing 2/1/10 Tr. at 7).) Further, the government contends that even if the defenses were mutually antagonistic, severance would not be the appropriate remedy. (Id.)

Despite Scarlato's most recently evolved defense strategy, the court finds that the reasons it originally denied severance when it first considered the parties' various motions for such relief continue to apply with equal force and the court finds no reason to reconsider its previous ruling. (See generally 12/23/10 Order at 52-71.) As an initial matter, evidence of Reisman's involvement in other, totally unrelated business ventures does not exculpate Scarlato, or any other defendant, because Reisman's other business dealings neither negate, nor are probative of, the other defendants' specific intent, if any, to defraud B.I.M. investors as charged in the indictment. Moreover, even without the introduction of any evidence regarding Reisman's other, irrelevant business ventures (such as Dinozine, See-it-Live, the Crude Oil deal, or the Sugar Deals), Scarlato will have the opportunity to elicit each of the "essential exculpatory" facts he wishes through cross-examination of Wetmore and Stern. Specifically, Scarlato will be able to ask on cross-examination:

4

> (i) whether Wetmore's $100,000 investment in B.I.M. on June 1, 2004 was done through Reisman alone and without Scarlato's knowledge or consent;
>
> (ii) whether Stern's $200,000 investment in an oil deal in 2005 was done through Reisman alone; and
>
> (iii) whether Stern or the Amankwahs were aware of any involvement by Scarlato in Reisman's use of Stern's investment to repay the Amankwahs.

(See Scarlato 2/2/10 Ltr. at 2.) Notably, Scarlato's motion does not proffer any reason that admission of evidence regarding Reisman's other business ventures would be required in order for him to conduct cross-examination and argue to the jury with regard to either (ii) or (iii) above. Further, the court finds that there would be no need for Scarlato to introduce the evidence of Reisman's other business ventures to adequately cross-examine or argue to the jury regarding (i) above. Thus, the court finds no prejudice requiring severance, because the proposed evidence of Reisman's other business ventures is not exculpatory. Moreover, Scarlato may pursue potentially exculpatory cross-examination, as discussed in (i) – (iii) above, and arguments to the jury in this joint trial. Cf. Zafiro v. United States, 506 U.S. 534, 539 (1993) ("a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial").

Finally, the court finds no reason to reconsider its previous finding that Scarlato and Reisman's defenses are not mutually antagonistic. (See 2/1/10 Tr. at 7.) Scarlato's intention to elicit testimony tending to show that he was uninvolved in certain investments made through Reisman alone, (see Scarlato 2/2/10), and Reisman's presumable intention to do the same, (see Reisman 2/3/10 Ltr. at 1 (noting that there is "no evidence . . . that Reisman had any contact with or knowledge of the many other alleged victims in this case")), do not raise the specter of mutually antagonistic defenses. To the contrary, cross-examination tending to show one defendant's lesser involvement in alleged criminal acts performed by another defendant is

5

perfectly permissible in a joint trial and does not create "mutually antagonistic defenses" requiring severance. See, e.g., United States v. Cardascia, 951 F.2d 474, 484 (2d Cir. 1991) ("It is not the mere existence of antagonistic defenses that prompts a required severance. Instead, the defenses must conflict to the point of being so irreconcilable as to be mutually exclusive before we will find such prejudice as denies defendants a fair trial."). Indeed, as the Second Circuit has noted, a mere adversarial stance by a codefendant "clearly does not, alone, require trials to be severed" for "[w]ere this true, a virtual ban on multidefendant conspiracy trials would ensue since co-conspirators raise many different and conflicting defenses." Id. at 484-85 (finding that defenses offered by codefendants were "not mutually exclusive at their core or essence" even where one defendant claimed he was "duped by the codefendants" while another defendant claimed that "he was not a part of the conspiracy but rather an innocent and unknowing bystander implicated only by the uncorroborated assertions of his codefendants" because the defendants failed to establish that the defenses would have prevented the jury from concluding that "the other defendants . . . defrauded" the first defendant and implicated the second defendant without his knowing it).

Accordingly, the motions to sever Reisman's trial are DENIED.

**Reisman's Motion to Preclude Testimony by Stern**

Reisman also seeks reconsideration of another previous ruling by the court. (See 12/23/09 Order at 44-46.) Specifically, Reisman moves once again to preclude testimony by government witness Stern. (See Reisman 1/31/10 Ltr., Reisman 1/22/10 Ltr.) The government objects and notes that the government bears the burden of proof and that the government should therefore be allowed to introduce evidence that "the only victim who received money back on his B.I.M. investment received it from another investor." (See Gov. 2/3/10 Ltr. #3.) Reisman has

6

previously had ample opportunity to brief and argue this motion. (See, e.g., Doc. No. 34, Mot. dated 8/5/09). The court carefully considered Reisman's arguments prior to issuing its 12/23/09 Order, and the court is not now suddenly convinced by Reisman's renewed assertions that the source of the funds used to repay the sole B.I.M. investor/lender who received any money back from the alleged scheme "is entirely irrelevant to this trial." (See Reisman 1/31/10 Ltr. at 1.) To the contrary, the court adheres to its previous holding that evidence of Wetmore's investment in the Crude Oil Deal and the use of those funds to repay another B.I.M. investor/lender is admissible as direct evidence of the crimes charged because, as an act taken to conceal an ongoing illegal agreement, the investment in the Crude Oil Deal constitutes an act in furtherance of the charged conspiracy and as such, it is highly probative evidence. (See 12/23/09 Order at 46 (citing United States v. Milstein, 401 F.3d 53, 72 (2d Cir. 2005).)

Further, the new factual bases Reisman cites as grounds for the court's reconsideration of its previous ruling are unpersuasive. Specifically, the fact that the CLH Loan transaction may have been "a convoluted and bizarre financial arrangement," (Reisman 1/31/10 Ltr. at 1), while certainly a proper subject of cross-examination, does not remove the probative value of Wetmore's Crude Oil Deal investment as an act taken in furtherance of the charged conspiracy. Additionally, the fact that Stern may have had a close personal relationship with Reisman is a similarly unconvincing basis for reconsideration of the court's previous order. (See Reisman 1/31/10 Ltr. at 2.) Because the court finds no basis to reconsider its previous ruling Reisman's motion to preclude testimony by Stern is DENIED.

### *In Camera* Review of Potential Brady Material

Finally, defendants have moved for *in camera* inspection by the court of certain statements memorialized in FBI 302s by C.B. Johnson and Karen Soltau, neither of whom will

be called as witnesses by the government.[4] The court has granted the defendants' request for *in camera* inspection, but upon such review finds that based upon the information available to the court, the government has discharged its obligations under Brady. See, e.g., Brady v. Maryland, 373 U.S. 83, 87 (1963).

"The basic rule of Brady is that the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." See United States v. Coppa, 267 F.3d 132, 139 (2d Cir. 2001). Thus, post-trial, a Brady violation is found where a defendant shows (i) government suppression of (ii) evidence favorable to the defendant, and (iii) that the evidence is material. See id. at 140. Evidence is not considered "suppressed" within the meaning of Brady if the defendant either "knew, or should have known of the essential facts permitting him to take advantage" of any exculpatory evidence. See, e.g., United States v. Payne, 63 F.3d 1200, 1208 (2d Cir. 1995). Further, undisclosed evidence is considered "material" pursuant to Brady only if the government's suppression "undermines the confidence in the outcome of the trial." Coppa, 267 F.3d at 141. Confidence in the trial's outcome is undermined where there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." Id. Thus, the Brady standard for materiality embodies a retrospective, "result-affecting" test which consequently "obliges a prosecutor to make a prediction as to whether a reasonable probability will exist that the outcome would have been different if disclosure had been made." Id. at 142.

Because of the difficulties associated with this retrospective standard for assessing Brady violations, it is typically the prosecution itself, and not the court, which bears the

---

4 In August 2009, when the government viewed Johnson as a potential government witness, the government provided Brady information to the defendants. (See Doc. No. 50, Ltr. dated 8/26/09.)

"responsibility to gauge the likely net effect" of all the evidence, because it is the prosecution alone which can fully appreciate what is undisclosed. See id. at 143. Before trial, the court is the least knowledgeable about the evidence and the prosecution's and defenses' cases. Under certain circumstances, however, trial courts may undertake an independent *in camera* review of relevant government files "not to provide a general discovery device for the defense" but to "supplement the Government's assessment of materiality with the impartial view provided by the trial judge." See United States v. Leung, 40 F.3d 577, 583-84 (2d Cir. 1994).

Here, the court has undertaken such a review. However, based upon its current understanding of the government's case, the court finds that the FBI 302s in question do not contain information favorable to the defense, or that the information is either "material" or which has been "suppressed" within the meaning of Brady and its progeny. Accordingly, the court agrees that the government has discharged its Brady obligations with respect to these documents.

**Conclusion**

For the foregoing reasons, Scarlato's and Reisman's motions for severance are DENIED; Reisman's motion to reconsider the court's previous ruling and preclude testimony by Stern is DENIED; and the court finds that the government has discharged its Brady obligations with respect to the documents provided for *in camera* inspection. All counsel shall appear ready to try the case in Courtroom 4E North at 9:30 a.m. on February 4, 2010.

SO ORDERED.

Dated: Brooklyn, New York
February 3, 2010

_____/s/_____
**KIYO A. MATSUMOTO**
United States District Judge